LEHMAN F. FELIX AND JOHN CLEARY, PLAINTIFFS-RESPONDENTS, v. LEON ADELMAN, DEFENDANT-APPELLANT.

Submitted May 25, 1934—Decided September 27, 1934.

For the plaintiffs-respondents, *Albert A. F. McGee.*

For the defendant-appellant, *Cole & Cole.*

The opinion of the court was delivered by

CASE, J. The action is an outcome of a collision on the White Horse pike near Absecon between a Ford truck owned and driven by Felix, Cleary being a passenger thereon, and a Packard car driven by Adelman. Both vehicles were headed south, the truck standing at the roadside either entirely or mostly off the concrete, the car traveling in speed towards Atlantic City. Felix, putting the truck in motion, undertook forthwith to make a sharp left or so-called "U" turn in order to become faced in the opposite direction on the other side of the highway and in so doing took a course crosswise of the traffic. The oncoming car smashed into the truck. The spot was not at or relatively near a road intersection.

The plaintiffs, Felix and Cleary, brought the present suit, joining their separate actions in the same complaint but setting up mutually exclusive counts. Adelman counter-claimed against Felix. Verdicts for money awards went for the plaintiffs on their respective claims and of no cause of action on the counter-claim. Adelman appeals from the whole judgment. The grounds of appeal go exclusively to the refusal of the trial court to charge the jury upon certain of the defendant's requests. The same general thought runs through all of these requests, and it is that Felix was under the duty to use great care and to seek an opportune time.

The first request places the idea in its simplest form and is the one first argued. It follows: "If you find that plaintiff Felix intended to make a left-hand turn and cross the path of oncoming traffic from the north on the White Horse pike in order to get over to Dad's clam stand, you will ask yourselves whether he used great care and sought an opportune time in so doing, for he cannot recover unless he did use great care and did seek an opportune time." Appellant relies upon decisions by the Supreme Court in *Senofsky* v. *Frecker,* 10 *N. J. Mis. R.* 505; 159 *Atl. Rep.* 797, and *Day* v. *Beyer,* 5 *N. J. Mis. R.* 1069; 139 *Atl. Rep.* 317. The fundamental rule, as expressed by this court, is that users of the highway must exercise reasonable care, that the degree of care required is commensurate with the risk of danger and

that where there is evidence from which performance of the duty thus imposed may reasonably be inferred the issue of negligence is for the jury. *Lipschitz* v. *New York and New Jersey Produce Corp.,* 111 *N. J. L.* 392; 168 *All. Rep.* 390. That legal principle was sufficiently charged to the jury. The trial court said in part:

"In consequence of receiving certain requests to charge submitted by the defendant, Adelman, I am induced to say to you that it was the duty of Mr. Felix in attempting to make a left-hand turn across a main highway, if you determine the White Horse pike to be such, to exercise care commensurate with the existing dangers. One who attempts to turn his car across a highway, which is a main artery of traffic, and in front of oncoming vehicles, if you conclude in this case that such were the circumstances, must exercise care commensurate with the hazard and danger of such a movement. * * * To find that a person was negligent is to conclude that such person failed to exercise reasonable care. And reasonable care is said to be that degree of care that an ordinarily prudent person would exercise or employ in the same or like circumstances. The degree of care required varies according to the circumstances. It has been stated in these cases, and rightly so, that the degree of care required of the drivers involved was a high, great, or extreme degree of care, particularly on the part of Mr. Felix, who was attempting to make a turn on a much traveled highway. If you regard reasonable care as a fixed degree of care, regardless of the circumstances, dangers, or hazards, then it becomes necessary to speak of it in these cases as a high degree of care, considering the circumstances existing at the time, because that degree of care which would be required in some circumstances might not be reasonable in other or different circumstances. If we emphasize the adjective 'reasonable,' as applies to the degree of care, we see that the degree of care may be variable. In other words, the degree of care that might be required of an ordinarily prudent person in some circumstances, would, perhaps, be greater or more, if I may use those two words, than would be legally expected of a person under other or different

circumstances. This discussion about the degree of care arises in these cases because it is contended on behalf of the defendant, Adelman, that Felix, having slowed down or stopped on the side of the road, contemplated crossing the highway not at a street intersection, but in the middle of a main highway, where oncoming drivers of vehicles, or other drivers, might not particularly expect him to make a turn. It is further contended, therefore, that Felix was under the duty of exercising that degree of care which was commensurate with those existing conditions, or those existing dangers."

We do not distinguish in this case between "great care" and a "high degree of care." "High degree of care" connotes no more than a degree of care commensurate with the risk of danger. *New Jersey Fidelity and P. G. Insurance Co.* v. *Lehigh Valley Railroad Co.*, 92 *N. J. L.* 467. How far an underlying legal principle should be amplified to fit special circumstances confronting a jury is difficult of general definition. We do not comment upon the portion of the charge relating to "great care" further than to observe that it was apparently charged because of the defendant's request and that it was, in our opinion, a compliance with so much of the request as bore upon that phrase.

However, it was said by this court in *Lipschitz* v. *New York and New Jersey Produce Corp.*, supra, that an automobile driver in undertaking to cross lines of traffic at the convergence of municipal streets with the state highway was burdened with the duty of seeking an opportune time. We think that the same duty rested upon Felix in the instant case, and even more conspicuously because the movement was not at an intersection. The request asked that that duty be stated to the jury. We find nothing that may be considered as a compliance. The court did read extensively from the Traffic act (*Pamph. L.* 1928, *ch.* 281, *p.* 762), including sections 4, 5, 6 and 7 of article 14 (*Cum. Supp. Comp. Stat.* 1930, § 179—715R—1404), wherein appears this language: "The driver of any vehicle, upon a highway, before starting, stopping, backing or turning from a direct line, shall first see that such movement can be made in safety * * *," but the

court, under the authority of *Baker* v. *Fogg & Hires Co.*, 95 *N. J. L.* 230; *Healey* v. *Braested*, 98 *Id.* 520; *Reeves* v. *Prosser*, 109 *Id.* 485, and other decisions, properly limited the force of the statute by charging that "the existence of these statutory rules * * * is a factor to which you may refer in considering all the other facts and circumstances." That was not enough to meet the request. We find nothing that makes a closer approach. Whether Felix did seek an opportune time was a jury question, but his duty was a matter of law which should, on request, have been clearly and distinctly charged. Inasmuch as the remainder of the request was charged, this, alone, was refused. We regard the refusal as error.

The remaining exceptions are in large part repetitions of the same thought. We find in them no further reversible error.

No argument is presented why the Cleary judgment should be disturbed. The requests to charge, with the exception of the fourth, did not relate to it, and the fourth request, which undertook to bind Cleary with Felix's alleged negligence, was not sound. The Cleary judgment is not dependent upon that of Felix. The single error that we perceive is, as we have indicated, a refusal to charge a legal proposition regarding the duty of Felix to Adelman, the potential harm to the latter being in the determination of the former's contributory negligence. If it should be found as a fact that Felix had not met the duty required by the legal ruling, his own negligence would thus be established and he would have no right to recover. But it having already been found factually, without legal fault, that Adelman was himself negligent, his liability to Cleary and his inability to collect from Felix are not altered.

Respondent contends that the appellant, although he reserved his exceptions on obtaining a rule to show cause why a new trial should not be granted, nevertheless, on the return of the rule before the trial judge, argued the court's refusal to charge and thereby waived his exceptions on those points, citing *Freschi* v. *Mason*, 108 *N. J. L.* 272, and other cases. The fallacy of that contention is that the appellant neither wrote down his exceptions as reasons nor argued them on the

return. Appellant did, in his argument on the rule, assert that the jury verdict was against the clear weight of the evidence and, citing *Day* v. *Beyer, supra,* and *Senofsky* v. *Frecker, supra,* that Felix was clearly guilty of contributory negligence, but the question of the judge's charge and the exceptions thereto was not mentioned and, as appears from a reading of the memorandum filed by the judge, was neither considered nor decided.

The judgment of Cleary against Adelman in the main case and the judgment for Felix against Adelman on the counterclaim will be affirmed. The judgment of Felix against Adelman on the former's complaint will be reversed, to the end that a *venire de novo* issue.

*For affirmance in part*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 15.

*For reversal in part*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, JJ. 14.